IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STEPHEN MARESCA,<br>HEATHER MARTIN-MARESCA,<br>M.M., C.M., and ANTHONY<br>MARESCA,<br><br>    Plaintiffs,<br><br>vs.<br><br>BERNALILLO COUNTY, and<br>BERNALILLO COUNTY SHERIFF<br>OFFICERS DEPUTY J. FUENTES,<br>DEPUTY G. GRUNDHOFFER,<br>DEPUTY L. TONNA, DEPUTY E.<br>LUCERO, DEPUTY L. SWINT, and<br>DEPUTY S. QUINTANA,<br><br>    Defendants. | No. 1:13-cv-00733-PJK-KBM |

MEMORANDUM OPINION AND ORDER
GRANTING SUMMARY JUDGMENT ON THE FEDERAL CLAIMS

    THIS MATTER comes on for consideration of Defendants' and Plaintiffs' motions for summary judgment. Docs. 51, 52, 56. Plaintiffs allege Fourth Amendment violations, 42 U.S.C. § 1983, and several state tort claims stemming from a roadside incident with police on March 14, 2013. Doc. 1, Exhibit A, at 1, 9; Doc. 56 at 1. Defendants contend that no Fourth Amendment violations occurred, and, in any event, they are entitled to qualified immunity. Doc. 8 at 11. Both Plaintiffs and Defendants contend that the undisputed facts entitle them to summary judgment. Upon consideration

thereof, the court finds that Defendants' summary judgment motion is well taken in part and should be granted as to Plaintiffs' federal claims. The court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims. Plaintiffs' summary judgment motion is not well taken and should be denied.

Background

On March 14, 2013, Plaintiffs Stephen Maresca and Heather Martin-Maresca and their children, seventeen-year-old Anthony Maresca, fourteen-year-old C.M., and nine-year-old M.M., were returning from a family hiking trip in their red pick-up truck. Doc. 1-1, ¶¶ 1-5, 13. Defendant Deputy J. Fuentes of the Bernalillo County Sheriff's Office saw Plaintiffs' vehicle traveling on Crest Road near Highway 14 in New Mexico and began following it. Doc. 1-1, ¶¶ 6, 14-15; Doc. 52, ¶¶ 1, 11; Doc. 65, ¶¶ 1, 6 . While driving, Deputy Fuentes ran a random NCIC license plate check by keyboarding Plaintiffs' plate number into her laptop computer.[1] Doc. 56, ¶¶ 2-3. However, Deputy Fuentes queried the wrong plate number (off by one digit): Rather than the actual number, NM 52<u>6</u>PLF, she apparently keyboarded NM 52<u>5</u>PLF. Doc. 1-1, ¶¶ 16-17. The incorrect license plate number came back as a stolen vehicle. Doc. 1-1, ¶ 18.

Based on the stolen-vehicle banner appearing on her laptop—and not realizing that she had keyboarded the incorrect number—Deputy Fuentes initiated a "felony stop" of

---

[1] It is uncontroverted that running a random license plate check is an accepted law enforcement practice and that Deputy Fuentes was not specifically targeting Plaintiffs. Doc. 52, ¶¶ 6-7; Doc. 65, ¶ 5.

Plaintiffs' vehicle on Highway 14.  Doc. 52, ¶ 15; Doc. 56, ¶ 7.  A "felony stop" is a "high-risk stop" in which officers secure a vehicle presenting a perceived threat to officer safety; thus, multiple officers approach with their guns drawn and have suspects exit the vehicle one at a time and are then placed in handcuffs.  See Green v. City & County of San Francisco, 751 F.3d 1039, 1043 (9th Cir. 2014); see also United States v. Melendez-Garcia, 28 F.3d 1046, 1050 (10th Cir. 1994).  The stated purpose of such a stop is to allow the police to "safely and methodically remove occupants of a vehicle safely and in a manner that provides for the safety of the officers and of the occupants."  Doc. 52, ¶ 57.  Thereafter, the investigation continues.  Before executing the felony stop of Plaintiffs' vehicle, Deputy Fuentes called for backup, and Defendant Deputy Grundhoffer arrived soon after.  Doc. 52, ¶¶ 11-16.

With their guns drawn,[2] the deputies ordered the passengers to put their hands up and for the driver to throw the keys out of the car and then exit.  Doc. 56, ¶¶ 13-14.  Mr. Maresca did so and then followed the officers' additional commands to lift up his shirt at the collar to expose his waistband for any possible weapons and to walk backwards toward Deputy Fuentes.  Doc. 56, ¶ 16; Doc. 52, ¶ 19.  When he reached Deputy Fuentes, he was ordered to his knees and then to lie prone on the ground with his arms out and his

---

[2] Plaintiffs contend that different Defendants pointed their weapons directly at them at different points during the stop.  Doc. 65, ¶¶ 10-11.  Defendants contend that their guns were only in the "low ready" position, which, for Plaintiffs lying on the ground, may have appeared as directed toward them.  Doc. 70, ¶ 7.  For purposes of summary judgment, the court adopts Plaintiffs' version of events on this point.  Cavanaugh v. Woods Cross City, 625 F.3d 661, 662 (10th Cir. 2010).

legs up. Doc. 56, ¶ 17. Mrs. Martin-Maresca was ordered to do the same, exiting the car, lifting her shirt to expose her waistline for guns, walking backwards toward Deputy Fuentes, and then lying prone on the highway. Doc. 56, ¶ 18.

Because Deputy Fuentes' voice gave out, Deputy Grundhoffer ordered the three remaining passengers out of the car following the same process: lifted shirt, walking backwards, and then lying prone on the highway. Doc. 56, ¶¶ 23-24; Doc. 52, ¶ 21. After all of the passengers exited the vehicle, a dog jumped out and ran to Mr. Maresca, who held the dog's collar while still on the ground. Doc. 65, ¶ 14. A deputy took the dog and placed her in a patrol car. Doc. 65, ¶ 14. Four of the five family members were then handcuffed and placed in separate police vehicles; M.M., the nine-year old, was placed uncuffed in a car with Mrs. Martin-Maresca. Doc. 56, ¶¶ 28-29. Mr. Maresca complained to deputies several times that his cuffs were too tight but to no avail. Doc. 65, ¶ 16.

During the incident, additional officers arrived on the scene. Deputy Tonna and his trainee, Deputy Lucero, averted traffic. Doc. 52, ¶ 25. Before assisting, Deputy Tonna attempted to verify the license plate number called out by Deputy Fuentes but was unable to do so because he lost his internet connection. Doc. 52, ¶ 26. Deputy Quintana responded to Deputy Fuentes's announced felony stop but arrived after all passengers were on the ground; he assisted by handcuffing Mr. Maresca. Doc. 52, ¶¶ 33, 37. Deputy Quintana advised Mr. Maresca and C.M. that they were being detained for investigative purposes only and were not being arrested. Doc. 52, ¶ 40; Doc. 52-17, at 3

at 12; Doc. 65, ¶ 17 (clarifying that the fourteen year-old male was C.M.). Deputy Swint responded to Deputy Tonna's request for additional traffic control; he retrieved a bean bag round for his gun to help with the dog but by the time he reached the area, the dog had been secured. Doc. 52, ¶¶ 31-34.

After clearing the vehicle and securing the passengers, Deputy Fuentes queried Mr. Maresca's driver's license and realized that she had keyboarded the incorrect vehicle license plate number. Doc. 52, ¶ 44. Upon learning that the Marescas' vehicle was not stolen, Deputy Fuentes informed the other deputies of the mistake. Doc. 52, ¶ 45. Plaintiffs were immediately released. Doc. 52, ¶ 48. Deputy Fuentes also informed Mr. Maresca, who wanted to speak with Deputy Fuentes' supervisor. Doc. 52, ¶ 46. According to dispatch time logs, Sergeant Jon Bartholf was called to the scene at 5:21 p.m., 15 minutes after the stop was initiated.[3] Doc. 52, ¶ 47; Doc. 65, ¶ 25.

Plaintiffs filed suit in state court seeking damages for (1) unreasonable seizure, (2) excessive force, (3) unlawful detention, and (4) unlawful arrest in violation of 42 U.S.C. § 1983, and (5) assault, false imprisonment, battery, negligence, and negligent training. Doc. 1-1. Defendants removed the case to federal district court. Doc. 1.

---

[3] Neither party disputes that the stop began at 5:06 p.m. Doc. 52, ¶ 15. However, Defendants contend that the stop ended seven minutes later, at about 5:13 p.m., when Plaintiffs were released and Sgt. Bartholf was called. Doc. 52, ¶ 51. Plaintiffs contend that Sgt. Bartholf was called at 5:21 p.m. based on the CAD report. Doc. 65, ¶ 25. The court adopts Plaintiffs' version of events on this point for purposes of summary judgment. Cavanaugh, 625 F.3d at 662.

Both Defendants and Plaintiffs seek summary judgment on various claims, and, given the motions by both parties, all of the federal claims are before the court. Docs. 51, 52, 56. The court addresses the merits of the federal claims and the individual Defendants' assertion of qualified immunity. Defendants contend that they acted in good faith and a reasonable manner "given the information and circumstances existing at the time." Doc. 8 at 11-12.

Discussion

Summary judgment is appropriate if the movant shows with materials in the record "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), 56(c)(1)(A); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A court views the evidence and its inferences in the light most favorable to the non-movant. Koch Indus., Inc. v. United States, 603 F.3d 816, 820–21 (10th Cir. 2010). However, when a defendant seeks summary judgment based on qualified immunity, the plaintiff bears the burden of establishing both a violation of a constitutional right and clearly established law supporting that right at the time of the violation. Lundstrom v. Romero, 616 F.3d 1108, 1118 (10th Cir. 2010). If the plaintiff fails to make the requisite showing, the court must grant qualified immunity. Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014).

Qualified immunity balances two important interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield

officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). The protection from civil damages afforded by qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (internal quotation marks and citation omitted). Thus, the issue is whether a reasonable officer could have believed his or her conduct was lawful in light of clearly established law and the information the officers possessed. Anderson v. Creighton, 483 U.S. 635, 641 (1987).

Plaintiffs argue that summary judgment should be granted in their favor on their Fourth Amendment claims based upon an unlawful seizure (Count I), excessive force (Count II), unlawful detention (Count III) and unlawful arrest (Count IV). Doc. 1-1 at 6-9; Doc. 56; Doc. 75 at 3. In their motion for summary judgment, they contend that (1) Deputy Fuentes failed to investigate basic evidence that Plaintiffs' vehicle was not stolen; (2) Defendants arrested Plaintiffs without probable cause given that weapons were drawn and four of the five Plaintiffs were handcuffed and secured in police cars, and (3) Defendant Fuentes utilized excessive force when she held the fully-compliant, unarmed family at gunpoint. Doc. 56 at 6-15.

Defendants argue that they should be granted qualified immunity on the four federal claims because they did not violate a constitutional right that was clearly established at the time of the alleged violation. Doc. 52 at 11-21. They contend that (1) the felony stop was an investigatory detention both justified at its inception and

reasonable under the circumstances, even though it was based on a mistake; (2) even if the investigatory detention could be considered a de facto arrest, Plaintiffs' seizure was supported by probable cause; and (3) the use of guns and handcuffs was not excessive under the circumstances, nor was any resulting harm anything but de minimus.  Doc. 52 at 13-21.  The court agrees with Defendants.

A.     The Stop and Detention of Plaintiffs

Plaintiffs characterize their encounter as a warrantless arrest based on the highly intrusive use of handguns, handcuffs, and forcing them to lie prone on the highway.  Doc. 56 at 10-11.  Defendants argue that the stop could be either an investigatory detention or a de facto arrest but that under either characterization, they had sufficient reason to constitutionally detain Plaintiffs based on the stolen vehicle report.  Doc. 60 at 10.

Although both an investigatory detention and a warrantless arrest are seizures under the Fourth Amendment, the standards for each are different.  An officer can permissibly stop and briefly detain a person for investigative purposes "if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause."  Cortez v. McCauley, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc).  The detention must be reasonably related in scope to the purpose of the stop and designed to confirm or dispel the reasonable suspicion in a timely manner.  United States v. Sharpe, 470 U.S. 675, 686 (1985); Terry v. Ohio, 392 U.S. 1, 19-20

(1968).  Once suspicion is dispelled, a citizen must be allowed to proceed on his way. United States v. Lyons, 510 F.3d 1225, 1237 (10th Cir. 2007).

A warrantless arrest must be based on the more rigorous standard of probable cause; that is, when "the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Cortez, 478 F. 3d at 1116 (internal quotation marks omitted).  The Tenth Circuit has observed that when officers deploy handcuffs, firearms, and other forceful techniques, it may exceed the scope of an investigatory detention and become an arrest for which probable cause is required.  Id. at 1115-16.  Factors to be considered in whether an investigative detention has become a de facto arrest include "the length of the detention, the manner in which it is conducted, and the degree of force used in determining whether an investigative stop is reasonably related to the basis for the original intrusion." Dorsey v. Barber, 517 F.3d 389, 399 (6th Cir. 2008).

Based upon the material undisputed facts, the encounter most resembles an investigative detention.  At the scene, one of the officers characterized it as such; while not controlling, the characterization suggests that the officer was aware of the difference.  The Tenth Circuit has repeatedly cautioned that using handcuffs, displaying firearms, or requiring a person to lie prone does not necessarily transform an investigatory detention into an arrest.  See, e.g., United States v. Neff, 300 F.3d 1217, 1220 (10th Cir. 2002); United States v. Shareef, 100 F.3d 1491, 1506 (10th Cir. 1996); United States v. Perdue, 8

F.3d 1455, 1462-63 (10th Cir. 1993).  These measures, albeit intrusive, may be appropriate during an investigatory detention, particularly when officers have concerns about their safety.  Lundstrom, 616 F.3d at 1122.  The seizure in this case—no more than fifteen minutes—was temporary and lasted no longer than necessary to effectuate the purpose of the stop.  See Sharpe, 470 U.S. at 686.  The stop was efficiently conducted such that officers could separate the passengers first, maintain the status quo with some degree of force, and then confirm or dispel whether the vehicle was stolen.  Once the mistake was discovered, Plaintiffs were allowed on their way.

Although Plaintiffs suggest that more efficient and less intrusive ways of proceeding could have been used, the issue is not whether alternatives existed but whether the method employed was reasonable under the circumstances.  Id. at 686-87.  Merely because less intrusive means may have been possible in the abstract does not make the encounter unreasonable, and courts must exercise caution in second-guessing based on hindsight.  Id.

Here, the license plate check run by Deputy Fuentes—albeit incorrectly—provided reasonable suspicion for the investigative detention.  Even if the investigative detention evolved into an arrest, a stolen vehicle banner is sufficiently trustworthy information to furnish probable cause.  See United States v. Hines, 564 F.2d 925, 927 (10th Cir. 1977) (officers' reliance upon stolen vehicle information reported by NCIC is adequate to establish probable cause); see also Duckett v. City of Cedar Park, Tex. 950 F.2d 272, 280 (5th Cir. 1992) (computer check indicating outstanding warrant provides probable cause);

United States v. Roper, 702 F.2d 984, 989 (11th Cir. 1983) (NCIC report of arrest warrant sufficient to support probable cause to arrest); United States v. McDonald, 606 F.2d 552, 553-54 (5th Cir. 1979) ("[T]he cases uniformly recognize that NCIC printouts are reliable enough to form the basis of the reasonable belief which is needed to establish probable cause for arrest."). The court holds that the stop and detention resulted in no constitutional violation.[4]

Plaintiffs argue that Defendants violated the Fourth Amendment—either as an investigatory detention or a de facto arrest—because they had a duty to investigate further before detaining them, i.e., to check that the correct license plate had been entered and notice the discrepancy between the two vehicles at issue. (The stolen vehicle report noted a red Chevrolet sedan while Plaintiffs were in a red pick-up truck. Doc. 56 at 5-6.) But even a mistaken premise can furnish the grounds for a stop "if the officers do not know that it is mistaken and are reasonable in acting upon it." Shareef, 100 F.3d at 1505 (internal quotation marks and citation omitted); see also United States v. Walvaren, 892 F.2d 972, 974-75 (10th Cir. 1989) (officer acted in good faith in pulling over vehicle despite dispatcher's mistake in entering the plate number during a registration check). Even Plaintiffs acknowledge, Doc. 56 at 8, that officers are allowed some latitude to make

---

[4] Although the court holds that no constitutional violation occurred, several cases have held that qualified immunity is appropriate notwithstanding a Fourth Amendment violation because officers could reasonably believe encounters were permissible investigative detentions, albeit based upon faulty or thin information. See Dorsey, 517 F.3d at 399-401; Humphrey v. Mabry, 482 F.3d 840, 849 (6th Cir. 2007); Smoak v. Hall, 460 F.3d 768, 782 (6th Cir. 2006); Feathers v. Aey, 319 F.3d 843, 849 (6th Cir. 2003).

honest mistakes when tasked with investigating and making arrests. Maryland v. Garrison, 480 U.S. 79, 87 (1987). Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (internal quotation marks and citation omitted).

In the words of Sgt. Bartholf, who spoke with Mr. Maresca immediately after the incident:

> I mean, people make mistakes all the time, in law enforcement, in pulling cars over. So I mean, it[']s bound to happen eventually, you know. . . . We've all done it. It's part of the job and being new.

Doc. 52-22 at 2, at 27-28. While Deputy Fuentes's mistake was regrettable, no facts suggest intentional misconduct.[5] Once the mistake was discovered, Plaintiffs were released, all within 15 minutes from when they were first detained.

Although Plaintiffs contend that three cases support their position that Defendants had a duty to conduct additional investigation, each is distinguishable based on the reliability of the information.

In Baptiste v. J.C.Penny Co., officers lacked probable cause because they relied solely on security guards' shoplifting allegations, even though the officers had an exact replication of what occurred and it did not support those allegations. 147 F.3d 1252, 1257

---

[5] As a practical matter, while the mismatch between the vehicle and the report certainly suggests a need for further inquiry, it does not rule out the possibility of a stolen vehicle plate being placed upon another vehicle.

(10th Cir. 1998).  Here, no alternative, objective source of information existed apart from the stolen vehicle report.[6]

In Cortez, officers lacked probable cause because they relied on unsubstantiated double-hearsay originating from a two-year-old child who allegedly reported sexual abuse to her mother, who then told a nurse, who then notified police, who initiated an arrest.  478 F.3d at 1118.  No such hearsay—either first- or second-hand—occurred here.

Finally, in Hartsfield v. Lemacks, officers were denied qualified immunity for executing a search warrant on the wrong residence despite having visited the correct house the previous day and securing the warrant based on direct observations of the house.  50 F.3d 950, 955 (11th Cir. 1995).  Here, Defendants had no such prior familiarity with Plaintiffs or their vehicle.  Rather, Deputy Fuentes simply made a keyboarding error.  The responding law enforcement personnel were entitled to rely upon the information from their fellow-officer that the vehicle was stolen.  United States v. Hensley, 469 U.S. 221, 231 (1985); Oliver v. Woods, 209 F.3d 1179, 1190-91 (10th Cir. 2000).

Accordingly, Defendants are entitled to summary judgment on the unreasonable seizure, unlawful detention, and unlawful arrest claims for want of a constitutional violation.

---

[6] Although Plaintiffs alleged in their complaint that Mr. Maresca repeatedly stated that there must be a mistake and to check his identification and registration, Doc. 1-1, ¶ 27, this does not change the outcome.  A court must first look at the justification for the stop. Here, consistent with a felony stop for a reportedly stolen vehicle, the Plaintiffs were removed and secured before any subsequent investigation could credit Plaintiffs' explanation.

B.     Excessive Force

Plaintiffs argue that Defendants used excessive force against Plaintiffs during their detention in violation of the Fourth Amendment because (1) they held them at gunpoint without any particularized suspicion that they were armed and dangerous; (2) even if Mr. Maresca was considered armed and dangerous, nothing imputed that danger to the other family members; and (3) nothing could justify holding the minor children at gunpoint under these circumstances.  Doc. 56 at 11-15.  Defendants argue that the force used was objectively reasonable and that any injury was de minimus.  Doc. 52 at 18-21.  The court agrees with Defendants that no constitutional violation occurred.

The right to make an arrest carries with it the right of officers to use some degree of physical force or coercion.  Graham v. Connor, 490 U.S. 386, 396 (1989).  Our courts clearly recognize that traffic stops present concerns for officer safety as they approach unknown drivers and passengers in the vehicles they have pulled over.  See, e.g., Morris v. Noe, 672 F.3d 1185, 1192 (10th Cir. 2012).  Thus, in effectuating investigatory stops, officers are constitutionally allowed to take reasonable protective measures and to maintain the status quo, including (1) displaying some force, (2) placing suspects on the ground, and (3) using handcuffs when officers have reason to be concerned for their safety.  United States v. Perdue, 8 F.3d 1455, 1462-63 (10th Cir. 1993) (citing cases).

Whether officers have engaged in excessive force in violation of the Fourth Amendment depends upon reasonableness.  Morris, 672 F.3d at 1195.  In determining reasonableness, the force is judged from a reasonable officer on the scene based on the

totality of circumstances and not based on "the 20/20 vision of hindsight." Id.; see also Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014). Rather, reasonableness is judged from the on-scene perspective in which officers are often forced to make split-second judgements in tense and uncertain circumstances. Graham, 490 U.S. at 396-97; see also Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1259-60 (10th Cir. 2008).

Although the felony stop in the instant case was undoubtedly intrusive when Plaintiffs were removed from their vehicle at gunpoint, forced to lie on the ground, and temporarily handcuffed, Defendants' techniques were nonetheless reasonable under the circumstances. The sole purpose of the stop was to quickly and safely secure what was believed to be a stolen vehicle, which is treated as a high-risk traffic stop by this law enforcement organization. The two responding Defendants—Deputies Fuentes and Grundhoffer—encountered five unknown subjects and cannot be expected to assume all is benign and that no concerted action would occur. The encounter took place on a highly-trafficked highway. Defendants quickly executed the stop, taking at most 15 minutes to clear the vehicle, secure the five occupants, and resolve the matter at hand.

Plaintiffs make much of the fact that Defendants had their guns trained on them, contending that under United States v. Melendez-Garcia, 28 F.3d 1046, 1052 (10th Cir. 1994), Defendants were required to provide a particularized showing as to why Plaintiffs were armed and dangerous in order to do so. Plaintiffs' reliance on Melendez-Garcia is misplaced. In Melendez-Garcia, the officers provided no justification as to why some six police officers employed a felony stop of two vehicles containing three occupants, after

police had been monitoring two of the occupants for several days for possible marijuana smuggling. 28 F.3d at 1052-53. The Melendez-Garcia court was not willing to assume what the officers should have made clear. Here, Defendants clearly articulated the need to employ the felony-stop techniques: Defendants had to immediately respond to a stolen vehicle report by quickly and safely executing a high-risk traffic stop on a busy highway in which they were initially outnumbered two to five. By having their guns drawn, Defendants could respond to any possible safety threat while maintaining the status quo. See Hensley, 469 U.S. at 235; see also Terry, 392 U.S. at 27 ("The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."). Handcuffing four of the Plaintiffs—the two adults, the seventeen-year old, and the fourteen-year old—and then further securing them by placing them in different patrol cars was also reasonable as it was part of the effort to quickly and safely secure the scene. The youngest Plaintiff, M.M., was not handcuffed but placed with her mother in a patrol car after officers gained control of the scene.

     Plaintiffs also argue that the treatment of the children, especially M.M., was unreasonable, relying on Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1193 (10th Cir. 2001). Plaintiffs overlook a crucial point. The Holland court found the officers' initial show of force reasonable when officers ordered children to the ground at gunpoint during a SWAT raid of a home. Id. However, that show of force became unreasonable when officers continued to hold the minors directly at gunpoint even though officers had

gained complete control of the situation.  Id.  No similar facts occurred here, as Defendants' guns were no longer used once Plaintiffs were quickly secured in handcuffs and then released.

Finally, Plaintiffs argue that they need not demonstrate actual injury for the court to find excessive force, again relying on Holland, 268 F.3d at 1192, and noting that each Plaintiff claims emotional distress and that Mr. Maresca complained that his handcuffs were too tight.  Doc. 65 at 19-20.  Plaintiffs confuse the issue of injury as it applies to different types of excessive force claims.

While Plaintiffs are correct that an excessive force claim can be supported without physical injury, the nature of that force must be unconstitutionally excessive, regardless of whether it leaves "visible cuts, bruises, abrasions or scars."  Holland, 268 F.3d at 1195.  The court has already determined that Defendants' use of force was not unconstitutionally excessive, regardless of whether Plaintiffs claim emotional distress as a result.

However, Plaintiffs' excessive force claim is also premised on physical injury by alleging in their complaint that each Plaintiff received road rash from the incident, Doc. 1-1, ¶ 50, and that Mr. Maresca complained repeatedly about his handcuffs being too tight, to no avail.  Doc. 65 at 20.

Under some circumstances, an officer's use of handcuffs can constitute excessive force where (1) a plaintiff alleges some actual injury from the handcuffing and (2) an officer ignored complaints or was otherwise aware that a plaintiff's handcuffs were too tight.  Cortez, 478 F.3d at 1129.  However, as the Cortez court explained, merely alleging

that handcuffs were too tight and left red marks is insufficient for purposes of summary judgment. Id. Something more is needed to demonstrate an excessive force claim if the use of handcuffs is otherwise justified, as is the case here. See id. Insofar as any road rash injury, nothing suggests any permanent injury.

Because Plaintiffs have not established that Defendants's use of force was unreasonable in violation of the Fourth Amendment, Defendants are entitled to summary judgment for want of a constitutional violation.[7] That absence of constitutional violations on Plaintiffs' federal claims precludes liability against Defendant County of Bernalillo. Jiron v. City of Lakewood, 392 F.3d 410, 419 n.8 (10th Cir. 2004).

Having disposed of Plaintiffs' federal claims, the court declines to exercise supplemental jurisdiction over the remaining state law claims, and they will be dismissed without prejudice. 28 U.S.C. § 1367(c)(3); Brooks v. Gaenzle, 614 F.3d 1213, 1229-30 (10th Cir. 2010).

NOW, THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that:

(1) Defendants Motion for Summary Judgment on Counts I-IV of the complaint (Docs. 51, 52) is granted; Plaintiffs' Motion for Summary Judgment (Doc. 56) is denied;

(2) Plaintiffs' remaining state law claims are dismissed without prejudice; and

---

[7] Even if the force was excessive, the individual Defendants would be entitled to qualified immunity given a reasonable mistake: a reasonable officer could believe that the force applied in this felony stop was constitutional. See Graham, 490 U.S. at 396-97; see also Plumhoff, 134 S. Ct. at 2023 ("[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.").

(3) Defendants' Daubert Motion With Regard To The Expert Opinion Of Joseph Blaettler (Doc. 53) and Defendants' Motion In Limine Regarding M. Hari Sheppard (Doc. 54) are denied as moot given the above disposition.

DATED this <u>19th</u> day of August 2014, at Santa Fe, New Mexico.

/s/ Paul Kelly, Jr.
United States Circuit Judge
Sitting by Designation

Counsel:

Deborah D. Wells, Kennedy, Moulton & Wells, P.C., Albuquerque, New Mexico, for Defendants.

Joseph P. Kennedy and Theresa V. Hacsi (Shannon L. Kennedy and Laura S. Ives with them on the briefs), Kennedy, Kennedy & Ives, LLC, Albuquerque, New Mexico, for Plaintiffs.